IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-01-309 (3) |
| | § | C.A. No. C-05-140 |
| MARIA GUADALUPE JIMENEZ | § | |
| | § | |
| Defendant-Movant. | § | |

**ORDER DISMISSING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE,
AND DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Defendant Maria Guadalupe Jimenez's ("Jimenez") motion to vacate, set aside or correct her sentence pursuant to § 2255 (D.E. 116),[1] which is deemed filed as of March 8, 2005.[2] The Court ordered the government to respond, and the government filed its response and motion to dismiss on August 4, 2005. (D.E. 126). As discussed in more detail herein, the Court DENIES Jimenez's motion because it is time-barred. Additionally, the Court DENIES Jimenez a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

**II. FACTS AND PROCEEDINGS**

On October 18, 2001, Jimenez and five co-defendants were charged in a superseding

---

[1] Dockets entries refer to the criminal case, C-01-cr-21.

[2] The Clerk received Jimenez's motion on March 14, 2005. The motion indicates that it was delivered to prison officials for mailing, however, on March 8, 2005 (D.E. 116 at 13), and it is thus deemed filed as of the earlier date. Houston v. Lack, 487 U.S. 266, 276 (1988)(a document is deemed filed by a *pro se* prisoner when it is delivered to prison authorities for mailing, postage pre-paid). See also United States v. Young, 966 F.2d 164, 165 (5th Cir. 1992)(providing benefit of Houston v. Lack to *pro se* prisoner in § 2255 proceedings).

indictment with: (1) knowingly and intentionally possessing with intent to distribute approximately 27 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) ("Count 1s"); and (2) conspiring to possess with intent to distribute approximately 997 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 ("Count 2s"). She pleaded guilty to Count 1s, pursuant to a written plea agreement, on November 30, 2001. (D.E. 56, 57).

Sentencing occurred on April 26, 2002. (D.E. 100). The Court imposed a term of imprisonment of 87 months, to be followed by a five-year supervised release term, and also imposed a $100 assessment. (D.E 100, 108). Judgment was entered on May 1, 2002. (D.E. 108). Jimenez did not appeal. She filed the instant motion to vacate pursuant to 28 U.S.C. § 2255 on March 8, 2005.

In her motion, Jimenez asserts a number of different claims.[3] First, she asserts that she was denied effective assistance of counsel based on the following alleged errors by counsel:

> 1. he failed to explain the consequences of signing the plea agreement and coerced her to plead guilty;
>
> 2. he failed to explain the presentence report and failed to file objections to the PSR; and
>
> 3. he failed to file a notice of appeal as she had requested.

Additionally, she claims that her constitutional rights were violated by the sentence imposed by the Court. Specifically, she claims that she was sentenced based on enhancements to her sentence not admitted at the plea colloquy or found by a jury beyond a reasonable doubt. She thus claims that her rights as set forth under Blakely v. Washington, 124 S. Ct. 2531 (2004) and United States v. Booker, 125 S. Ct. 738 (2005) were violated.

---

[3] Rather than list the grounds in the same order as Jimenez does, an order that the government also adopted, the Court has grouped them by topic.

## III. DISCUSSION

**A.     Statute of Limitations**

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final.[4] 28 U.S.C. § 2255. The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired. Clay v. United States, 537 U.S. 522, 123 S. Ct. 1072, 1078-79 (2003); United States v. Gamble, 208 F.3d 536, 536-37 (5th Cir. 2000)(*per curiam*).

The period for Jimenez to file a notice of appeal from the judgment against her expired ten days after the entry of judgment. Fed. R. App. P. 4(b). At the time that Jimenez's judgment was entered, Fed. R. App. P. 26 provided that the ten-day period for appealing did ***not*** exclude intermediate Saturdays, Sundays and legal holidays.[5] Calculated under Rule 26 in effect at that time, then, ten days after is May 1, 2002 is May 13, 2002.[6] As previously noted, Jimenez did not appeal.

---

[4] The statute provides that the limitations period shall run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

[5] At the time final judgment was entered against Jimenez, Rule 26(a)(2), Fed. R. App. P., provided that when calculating time under the Federal Rules of Appellate Procedure, a litigant should "[e]xclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 7 days, unless stated in calendar days." Effective December 1, 2002, the rule reads that a litigant should "exclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days, unless stated in calendar days." See 2002 Adv. Comm. Notes, Fed. R. App. P. 26.

[6] The ten-day period ended on Saturday, May 11, 2002. Thus, the notice of appeal was due not later than Monday, May 13, 2002. See Fed. R. App. P. 26(a)(3)-(4).

3

Her conviction therefore became final when the time for filing an appeal expired, or on May 13, 2002. Jimenez's time period for filing a motion pursuant to 28 U.S.C. § 2255 expired a year after that date, or on May 13, 2003. Jimenez's motion was filed on March 8, 2005. Thus, it was filed almost two years beyond the deadline as calculated under § 2255(1), and is untimely.

Jimenez argues, however, she is entitled to equitable tolling. She offers the following explanation for the lateness of her motion:

> Petitioner is ignorant to the law of the United States and not knowing the rules and regulations petition never file 2255 Motion, because she did not know what do to and do to this I was deprived of my constitutional rights. [sic]

(D.E. 116 at 12; see also D.E. 116, supporting memorandum at page 25-26 (requesting tolling)).

The limitations period for § 2255 motions is not considered a jurisdictional bar, but the limitations period is subject to equitable tolling "only 'in rare and exceptional cases.'" United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002), cert. denied, 123 S. Ct. 2630 (2003)(quoting Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)). Equitable tolling is not required simply because a petitioner is unfamiliar with the legal process, is unrepresented, or is illiterate. Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999); see also United States v. Benitez, 2003 WL 22456804, at *2 (N.D. Tex. 2001) (citing United States v. Cordova, 1999 WL 1136759 at *1 (10th Cir. 1999)) (lack of fluency in English not circumstance sufficient to toll limitations). Based on the foregoing authority, Jimenez's stated reasons for filing her motion outside the limitations period are insufficient to warrant equitable tolling. Accordingly, her motion is time-barred, as calculated using § 2255(1).

**B.  Timeliness of Booker claim**

Although she doesn't explicitly argue that Blakely or Booker should be applied retroactively to her case, Jimenez requests relief pursuant to Booker. If Booker applied retroactively to cases

4

already final on direct review when it was decided, then § 2255, para. 6(3) would render her claim timely. See supra note 4. Because this Court concludes that Booker does not apply retroactively, however, her Booker claim is not timely.

   1.   **Booker Background**

To explain the Court's conclusions regarding the retroactivity of Booker, some background regarding both it and its predecessor, Blakely v. Washington, 124 S. Ct. 2531 (2004), is warranted. In Blakely, the Supreme Court held that the trial court's sentencing of the state defendant violated his Sixth Amendment right to a jury trial. Specifically, the court held that Apprendi v. New Jersey, 530 U.S. 466 (2000) and other precedents preclude a judge from utilizing a fact found by him using a preponderance of the evidence standard, in order to impose more than the maximum sentence that could be imposed based solely on the facts reflected in the jury verdict or admitted by the defendant. Blakely, 124 S. Ct. at 2537-38. Blakely involved a defendant sentenced in a Washington state court pursuant to Washington's determinate sentencing scheme. See generally id.

Booker addressed Blakely's impact on the federal sentencing guidelines, which are applied in federal criminal cases. Booker consists of two majority decisions. In the first majority opinion, authored by Justice Stevens, the Court held that Blakely applied to the federal guidelines. As with the sentencing scheme at issue in Blakely, the mandatory nature of the federal sentencing guidelines implicated defendants' Sixth Amendment rights, because the guidelines can require judges to find facts and sentence defendants to more severe sentences than could be imposed based solely on facts found by the jury or admitted in the plea colloquy. Booker, 125 S. Ct. at 750-51, 756.

In the second majority opinion, authored by Justice Breyer, the Supreme Court discussed the remedy to be applied in light of its first holding. The remedy selected by the majority of the justices was to excise certain portions of the guidelines (most notably the provision making them mandatory,

18 U.S.C. § 3553(b)(1), and a provision dealing with appeals from sentencing decisions, 18 U.S.C. § 3742(e)), but to preserve the scheme as a whole. Booker, 125 S. Ct. at 756-57. As a result, the Court's decision rendered the guidelines "effectively advisory." Id. at 757. The court held, however, that district courts are required to consider the advisory guideline sentence when sentencing within the statutory ranges set by Congress. Id.

For the reasons discussed in the next section of this Order, the Court concludes that relief under Booker is not available on collateral review to a defendant like Jimenez, whose conviction became final prior to the date Booker was decided, January 12, 2005.

2.     **Retroactivity Analysis**

Neither of the majority opinions states that Booker should be applied retroactively to convictions and sentences that are already final. Instead, Justice Breyer's decision concerning the proper remedy simply indicates that the Court's Booker holdings should be applied "to all cases on direct review." Booker, 125 S. Ct. at 769 (emphasis added).[7]

The Fifth Circuit has held that the Supreme Court has not made Booker retroactive, for purposes of allowing second or successive petitions under 28 U.S.C. § 2255. In re Elwood, 408 F.3d 211 (5th Cir. 2005). Additionally, in the context of discussing whether a claim fell within the savings clause of § 2255, a panel of the Fifth Circuit has recently stated: "Like Apprendi, Booker's holding is not retroactively applicable to cases on collateral review." Padilla v. United States, 416 F.3d 424, 427 (5th Cir. 2005). The Padilla decision does not contain any analysis or discussion as to how the court reached this conclusion. Rather, the decision simply cites to the first page of the

---

[7] The Court recognizes, of course, that retroactivity was not an issue in Booker or its companion case, Fanfan, both of which came to the Supreme Court as direct criminal appeals. Thus, the quoted language arguably has no meaning as to Booker's retroactivity in collateral proceedings.

Booker decision for authority, as well as to a case decided prior to Booker, Wesson v. U.S. Penitentiary Beaumont, TX, 305 F.3d 343, 347 (5th Cir. 2002), neither of which states that Booker does not apply retroactively. Nonetheless, to the extent the opinion was intended to address the precise issue before the Court here,[8] it directs that Booker is not retroactively applicable.

Notably, the Padilla court's conclusion is consistent with every other federal circuit to have addressed the issue directly. Specifically, the Second, Third, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits have all addressed the retroactivity of Booker on initial collateral review and have concluded that Booker does not apply retroactively. See McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005)(concluding that Booker states a new non-watershed procedural rule and does not apply retroactively to criminal cases final before its release); United States v. Humphress, 398 F.3d 855 (6th Cir. 2005)(same); Varela v. United States, 400 F. 3d. 864 (11th Cir. 2005)(same); Guzman v. United States, 404 F.3d 139 (2d Cir. 2005)(same); Lloyd v. United States, 407 F.3d 608 (3d Cir. May 17, 2005)(same); United States v. Bellamy, 411 F.3d 1182 (10th Cir. 2005)(same); Never Misses a Shot v. United States, 413 F.3d 781 (8th Cir. 2005)(same).

Similarly, in a post-Booker decision, the Ninth Circuit held that Blakely does not apply retroactively to convictions that became final prior to its publication. Schardt v. Payne, 414 F.3d 1025 (9th Cir. 2005). In so doing, the Schardt court utilized reasoning which would be equally applicable to Booker. See generally id.

---

[8] As noted, the Padilla court's statement was made in the context of discussing whether a defendant's claims fell within the scope of the savings clause of § 2255. In order to show that his claims fell within the savings clause, the movant had to show that he was asserting a claim of actual innocence "(1) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal or first § 2255 motion." Padilla, 416 F.3d at 426 (quoting Reyes-Requena v. United States, 243 F.3d 893 (5th Cir. 2001)). Despite its broad language, the lack of any analysis suggests that it may not have been intended to directly address the more complicated issue of whether Booker is retroactive on initial collateral review outside the context of § 2255's savings clause.

7

The Court agrees with the reasoning set forth in the foregoing cases. In particular, the Court concludes that the Supreme Court's decision in Schriro v. Summerlin, 124 S. Ct. 2519 (2004), handed down the same day as Blakely, is highly pertinent to the issue of Booker and Blakely retroactivity. In Schriro, the Supreme Court was faced with determining whether its decision in Ring v. Arizona, 536 U.S. 584 (2002), could be applied retroactively on collateral review. Ring, like Blakely, applied the principles of Apprendi. In Ring, the Court held that a jury must find the aggravating facts statutorily required to impose the death penalty. In Schriro, the Court first concluded that Ring was a new rule of procedure (as opposed to a substantive rule), and noted the general principle that new rules of procedure do not apply retroactively. 124 S. Ct. at 2522-23. It then determined that the rule in Ring did not fall within any of the narrow exceptions to the general principle, as set forth in Teague v. Lane, 489 U.S. 288 (1989), including the exception for "watershed rules of criminal procedure" essential to the fairness of the proceedings. Schriro, 124 S. Ct. at 2524-25. It concluded, therefore, that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." Schriro, 124 S. Ct. 2526.

This Court finds the reasoning in Schriro to be persuasive and pertinent here. Like the rule in Ring, the rule announced in Blakely (and extended to the federal guidelines in Booker) is a new rule of procedure, but does not fall within any of the Teague exceptions.

The Court recognizes, however, that Schriro did not address the evidentiary standard issue in Blakely, i.e., the portion of the holding that requires facts increasing a sentence to be found beyond a reasonable doubt, rather than by a simple preponderance standard. Rather, the Schriro court determined the retroactivity of a rule delineating who the factfinder should be (i.e., judge versus jury).

Nonetheless, as the Seventh and Third Circuits noted in addressing Booker's retroactivity, the determination of whether or not the evidentiary standard is a "watershed" rule of procedure that

8

should be applied retroactively would be a more difficult one if only the first majority opinion existed in Booker. See McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005); Lloyd v. United States, 407 F.3d 608 (3d Cir. 2005). As these courts have noted, however, the remedy selected by the second Booker majority "held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence." McReynolds v. United States, 397 F.3d at 481; see also Lloyd, 407 F.3d at 615 ("It would be one thing if we were only dealing with Justice Stevens's opinion in Booker," but "[b]y creating an advisory federal sentencing regime, the Booker Court did not announce a new rule of criminal procedure that significantly increases the 'certitude' or 'accuracy' of the sentencing process.").

The McReynolds court further explained:

> As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a 'watershed' change that fundamentally improves the accuracy of the criminal process.

397 F.3d at 481. The Court finds the reasoning of Floyd and McReynolds on this point persuasive. For all of the foregoing reasons, the Court concludes that Booker is not retroactive to cases on collateral review. Because Jimenez's conviction became final prior to the date Booker was decided, January 12, 2005, she is not entitled to relief under Booker. Her claims premised on Blakely and Booker – like the rest of her claims – are untimely. Accordingly, her motion is hereby DISMISSED.

**C.      Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Jimenez has not yet filed a notice of appeal, this Court nonetheless addresses whether she would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898

(5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000)(emphasis added); see also United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002)(applying Slack to COA determination in context of § 2255 proceedings). It is unnecessary for the Court to decide whether Jimenez has stated a valid claim for relief, because she cannot establish the second Slack criterion. That is, reasonable jurists could not disagree that his motion is time-barred. Accordingly, Jimenez is not entitled to a COA.

## IV.  CONCLUSION

For the above-stated reasons, Jimenez's motion under 28 U.S.C. § 2255 (D.E. 116) is DISMISSED.  The Court also DENIES her a Certificate of Appealability.

ORDERED this 19th day of September 2005.

_____
Janis Graham Jack
United States District Judge